Per Curiam

*783 TEXTO COMPLETO DE LA SENTENCIA
Estamos ante un caso novel. El apelante, Sr. David Rosa Soto, recurre ante nos, mediante un recurso de apelación de la sentencia dictada por la Honorable Jeannette Tomasini, Juez Superior del Tribunal de Primera Instancia, Sala Superior de Bayamón el 9 de julio de 1999.
En la referida sentencia, entre otras cosas, se dispuso que el apelante señor Rosa Soto, “no puede actuar como Alcalde en propiedad del municipio de Toa Alta. Sin embargo, procede que éste continúe como Alcalde Interino, hasta que el Alcalde electo y certificado por la Comisión Estatal de Elecciones sea debidamente juramentado... ”.
Valga aclarar que aun cuando el caso ante el Tribunal de Primera Instancia, fue iniciado mediante un recurso de injunction y la intervención del Sr. Angel Marrero Hueca fue aduciendo un recurso de quo warranto, la Juez consideró y resolvió el caso como una Sentencia Declaratoria.
Luego de examinar cuidadosamente las alegaciones de las partes, evaluar y considerar el derecho aplicable, determinamos confirmar la sentencia apelada. Veamos porqué.
I
Para la adecuada comprensión del asunto ante nuestra consideración, se hace imperativo que hagamos un breve recuento histórico de lo acontecido en este caso, a los fines de entender el tortuoso proceso que ha perneado la situación de hechos y de derecho que hoy nos ocupa.
El Sr. Angel E. Rodríguez Cabrera, conocido por Buzo, renunció a su posición como Alcalde del Municipio de Toa Alta mediante comunicación del 25 de febrero de 1999, dirigida al Presidente del P.N.P., Hon. Pedro Rosselló, Gobernador de Puerto Rico, de la cual sirvió copia a la Asamblea Municipal de Toa Alta, al Comité Local del P.N.P. en el referido municipio y a la Junta del C.R.I.M.
Por tal razón, el 26 de febrero de 1999, el Secretario del Comité Municipal del P.N.P. en Toa Alta expidió una convocatoria, por conducto del Secretario General del P.N.P., Sr. José F. Aponte, citando a los miembros del referido Comité Municipal para una reunión extraordinaria a celebrarse el 11 de marzo de 1999, con el propósito *784 de seleccionar a la persona que llenaría la vacante de alcalde de dicho municipio. Todo esto se hizo sin observar el procedimiento establecido por la Ley de Municipios Autónomos para atender situaciones de esta naturaleza, en la cual sea necesario cubrir una vacante de la posición de alcalde.
Mientras tanto, el 2 de marzo de 1999, la Asamblea Municipal de Toa Alta aceptó la renuncia al puesto de alcalde, presentada por el señor Rodríguez Cabrera y designó al señor Rosa Soto como Alcalde Interino de dicho municipio, mediante la Resolución número 50, Serie 1998-1999, hasta tanto fuese seleccionado el alcalde en propiedad.
Como consecuencia de lo anterior, el 3 de marzo de 1999, la Sra. Carmen Hernández Peña, Secretaria de la Asamblea Municipal de Toa Alta, remitió una carta al Comité Local del P.N.P., —dirigida a su Vice-presidente Sr. Angel Marrero Hueca,— notificándole la vacante surgida en el puesto de alcalde de dicho municipio, conforme dispone la Ley de Municipios Autónomos. En esa misma fecha, la señora Hernández Peña le notificó, además, al señor Aponte, Secretario General del P.N.P., la aceptación de la renuncia del señor Rodríguez Cabrera como Alcalde de Toa Alta. El Secretario del Comité Municipal envió una convocatoria enmendada por conducto del Secretario General del Partido el 3 de marzo de 1999, cambiando la fecha de la reunión del Comité Municipal para la selección del alcalde sustituto para el 17 de marzo de 1999, o sea, dentro de los quince (15) días dispuestos por la referida ley para que el Comité Local seleccionase al candidato para cubrir la vacante de alcalde.
De otra parte, el señor Rosa Soto presentó formalmente su candidatura para sustituir al alcalde renunciante ante el organismo central del P.N.P. el 5 de marzo de 1999, sometiendo el formulario y demás documentos requeridos por dicho partido, entre ellos las Planillas de Contribución Sobre Ingresos, para ser considerado como aspirante a ocupar un puesto político. Dicho formulario incluia una declaración jurada del señor Rosa, según requerida por el partido, que: (1) indica que toda la información sometida es correcta a su mejor entender y que no ha omitido información relevante, (2) autoriza a dicho partido a investigar la veracidad de la información sometida conjuntamente con su candidatura, (3) reconoce que toda información falsa o errónea sometida ante el partido es base suficiente para su descalificación como candidato del mismo y, (4) que acatará las disposiciones del Reglamento del P.N.P.
Así las cosas, el 11 de marzo de 1999, el Comité de Evaluación del P.N.P. declaró al señor Rosa como no calificado para aspirar a la posición de Alcalde de Toa Alta. Dicho Comité recomendó al Directorio del Partido la No Calificación del señor Rosa Soto. A su vez, el señor Rosa Soto solicitó la reconsideración de tal determinación ante el Comité de Evaluación el 15 de marzo de 1999.
En esta última fecha, el Secretario General del P.N.P. dejó sin efecto la convocatoria hecha para el 17 de marzo de 1999 para la selección del nuevo Alcalde a los fines de atender adecuadamente la reconsideración del señor Rosa ante el Comité de Evaluación del P.N.P.
Dos días después, el 17 de marzo de 1999, el Comité Municipal del P.N.P. en Toa Alta, obviando la cancelación de la reunión efectuada por el Secretario General del P.N.P., en una reunión convocada súbitamente por el Secretario del Comité Local, eligió al señor Rosa Soto como Alcalde de dicho Municipio en sustitución del Alcalde renunciante. Esa misma noche, inmediatamente después de haber sido seleccionado, el señor Rosa Soto suscribió un juramento de fidelidad y toma de posesión del cargo de Alcalde de Toa Alta en propiedad.
Al día siguiente, el secretario del Comité Municipal del P.N.P. en Toa Alta remitió a la Asamblea Municipal la certificación de elección del señor Rosa Soto y el documento de su juramento al cargo de Alcalde de Toa Alta en propiedad. Ese mismo día el Presidente de la Asamblea Municipal de Toa Alta -“en cumplimiento de lo *785 dispuesto en el Art. 3.004 de la Ley de Municipios Autónomos de Puerto Rico”- le notificó al Presidente del P. N.P., Dr. Rosselló, “para su conocimiento y acción”, la selección del señor Rosa Soto como nuevo Alcalde de Toa Alta.
No obstante lo anterior, el 26 de marzo de 1999, el Comité de Evaluación del P.N.P. declaró sin lugar la reconsideración del señor Rosa Soto. Este solicitó reconsideración ante el Directorio del Partido, pero el 6 de abril de 1999 dicho organismo confirmó por unanimidad la determinación del Comité de Evaluación.
El 6 de abril de 1999, el apelante, señor Rosa Soto, presentó ante este Tribunal un recurso de mandamus, solicitando básicamente que ordenáramos al Dr. Pedro Rosselló, Presidente del P.N.P., notificar a la Comisión Estatal de Elecciones que lo certificara como Alcalde electo.
El 25 de mayo de 1999, denegamos la expedición del recurso de mandamus por considerar que la controversia entre las partes debía ser dilucidada fuera del recurso de mandamus.
Mientras tanto, el P.N.P. efectuó una elección especial el 16 de mayo de 1999 con los cinco (5) candidatos que fueron previamente cualificados por dicho partido para seleccionar al Alcalde en propiedad en el Municipio de Toa Alta. En ese proceso resultó ganador el Sr. Angel Marrero Hueca.
En virtud de tal elección, el señor Marrero Hueca presentó una solicitud de intervención en un pleito de injunction ante el Tribunal Superior de Bayamón que habían presentado los señores Francisco Vázquez Santiago y José Manuel Díaz Rivera -ambos Asambleístas Municipales de Toa Alta, el primero por el Partido Independentista Puertorriqueño y el segundo por el Partido Popular Democrático- contra el Sr. Rosa Soto, cuestionando su desempeño como Alcalde en propiedad sin éste haber sido certificado como tal por la Comisión Estatal de Elecciones.
En el ínterin, el señor Rosa Soto volvió a acudir ante esta Curia, mediante otro recurso de mandamus cuestionando lo actuado por el Tribunal de Primera Instancia en el caso de injunction ante su consideración. Nuevamente este Tribunal denegó la expedición de dicho recurso por los méritos expuestos en la Resolución del 22 de junio de 1999. (Núm. KLRX-99-00033).
Así las cosas, los días 24 y 25 de junio de 1999, se llevaron a cabo las vistas ante el Tribunal de Primera Instancia para dilucidar la situación planteada. El dictamen de la sentencia emitido por dicho Tribunal, tuvo el resultado antes reseñado.
Inconforme con la sentencia dictada, el señor Rosa Soto acude ante nos alegando que el Tribunal de Primera Instancia incurrió en los siguientes tres (3) errores:

“PRIMER ERROR: Erró el Tribunal de Instancia al declarar CON LUGAR la moción de Intervención de los interventores apelados y celebrar una vista evidenciaría en relación con la misma que envuelve la determinación de la legalidad del ejercicio de su cargo de Alcalde del demandado-apelante, Hon. David Rosa Soto.

SEGUNDO ERROR: Erró el Honorable Tribunal de Instancia al dictar Sentencia Declaratoria contra el demandado-apelante, Hon. David Rosa Soto, y al entrar a considerar dentro de la petición original radicada aspectos jurídicos que sólo pueden ser resueltos mediante el recurso de QUO WARRANTO.

TERCER ERROR: Erró el Honorable Tribunal de Instancia en su apreciación y suficiencia de la prueba 
*786
testifical presentada. ”

Pasemos a considerar los errores imputados al Tribunal de Primera Instancia.
II
En cuanto al primero de los errores alegados, la Regla 21.1 de las de Procedimiento Civil de Puerto Rico, 32 L.P.R.A. Ap. III, R. 21.1, es la que rige en materia de intervención en un pleito. La misma establecé:

“Regla 21.1. Como cuestión de derecho.

Mediante oportuna solicitud, cualquier persona tendrá derecho a intervenir en un pleito (a) cuándo por ley o por estas reglas se le confiere un derecho incondicional a intervenir; o (b) cuando el solicitante reclame algún derecho o interés en la propiedad o asunto objeto del litigio que pudiere de hecho quedar afectado cóñ la disposición final del pleito. ”

La Regla 21.1 actual, corresponde, en parte, a la Regla 24 (a) de las de Procedimiento Civil Federal. Nuestras disposiciones reglamentarias expanden, de forma considerable, el ámbito de la intervención. Por ejemplo, en cuanto a la intervención como cuestión de derecho "... ya no es necesario qué el solicitante demuestre, contrario a la norma federal, que la representación de su interés por las partes en litigio no es adecuada. Se eliminó también el requisito establecido por la jurisprudencia de qué el Solicitante pudiera luego estar impedido por una sentencia bajo la doctrina de cosa juzgada. Se ha intentado impartir a la Regla la máxima flexibilidad”. Doral Mortgage Corp. v. Alicea, 99 J.T.S. 35.
El criterio para determinar si se reconoce o no el derecho de intervención es práctico y no conceptual. La utilidad de este mecanismo procesal estriba en ofrecer protección a un nutrido e indefinido grupo.de personas con variados intereses, en ocasiones de tremenda importancia pecuniaria o legal. Ready Mix Concrete, Inc. v. Ramírez de Arellano & Co., 110 D.P.R. 869 (1981). Entre los criterios que utilizará el Juez para permitir lá intervención o no de una persona o corporación en un pleito están: (1) si existe de hecho un interés que amerite protección; y (2) si quedaría afectado, como cuestión práctica, por la ausencia del interventor en el casó. Lá determinación final depende del balance a lograrse entre el interés en la economía procesal, representada por la solución en un sólo pleito de varias cuestiones relacionadas entre sí, y el interés en evitar que los pleitos se compliquen y eternicen innecesariamente. Chase Manhattan Bank v. Nesglo, Inc., 11 D.P.R. 767 (1981); Doral Mortgage Corp. v. Alicea, 99 J.T.S. 35.
En el caso de autos, la parte apelante, Sr. David Rosa Soto, alega que erró el Tribunal de Primera Instancia al permitir la intervención del apelado, Sr. Angel Marrero Hueca. No le asiste la razón.
El Sr. Marrero Hueca fue cualificado como candidato a Alcalde del Municipio de Toa Alta conforme al Reglamento del Partido Nuevo Progresista y a la Ley de Municipios Autónomos, 21 L.P.R.A. sec. 201 et seq. Posteriormente, se sometió a una elección especial en la cual resultó victorioso. A esos efectos, fue certificado por el Sr. Ramón Jiménez Fuentes, Secretario de la Comisión Estatal de Elecciones, el día 4 de junio dé 1999 y juramentado por el Juez, Hon. Felipe Rivera.
No cabe la más mínima duda de que la disposición final del presente pleito afectaría grandemente los intereses y derechos del Sr. Marrero Hueca. La solicitud de intervención se hizo el 9 de junio de 1999 y ya desde el 4 de junio, como expresáramos anteriormente, el Sr. Marrero Hueca había sido certificado. El propósito primordial de la adopción de la Regla 21.1 de las de Procedimiento Civil, supra, es lá economía procesal, de manera que puedan resolverse en un mismo pleito controversias relacionadas entré sí. Permitir a *787 una persona que no fue incluida como parte en un litigio solicitar la intervención en el mismo cuando algún derecho o interés propio se vea afectado sirve adecuadamente dicho propósito. Concurrimos con el Tribunal de Primera Instancia.
El apelante, Sr. David Rosa Soto, alega, además, que el apelado, Sr. Angel Marrero Hueca, carece de legitimación en causa para formar parte de este litigio. Tampoco le asiste la razón. La figura de legitimación en causa o standing, como se le conoce en el Derecho Común, requiere que “la persona que pretende ser parte ha de tener una capacidad individualizada y concreta en la reclamación procesal”. Colegio de Opticos de P.R. v. Vani Visual Center, 124 D.P.R. 559 (1989). De esta manera aseguramos “que el promovente de la acción es uno cuyo interés es de tal índole, que con toda probabilidad, habrá de proseguir su causa de acción vigorosamente y habrá de traer a la atención del tribunal las cuestiones en controversia. ” Hernández Agosto v. Romero Barceló, 112 D.P.R. 407, 413 (1982); Flast v. Cohen, 392 U.S. 83, 99-100 (1965); Baker v. Carr, 369 U.S. 186, 204 (1962). Corresponde a cada litigante demostrar que tiene acción legitimada para acudir al foro judicial. 
Durante las últimas décadas, los requisitos de acción legitimada han sido interpretados de forma flexible. Colegio de Opticos de P.R. v. Vani Visual Center, supra. Según expresó el Tribunal Supremo de Puerto Rico:
Esta nueva visión responde a un reconocimiento de que para cumplir con nuestra responsabilidad constitucional en esta época debemos interpretar liberalmente los requisitos de legitimación activa de aquellos que acuden al foro judicial en auxilio de nuestra jurisdicción. Véase B. Schwartz, Administrative Law, 2da ed., Boston, Ed. Little, Brown & Co., 1985, Sec. 8.11, págs. 459-461. De lo contrario, cerramos las puertas de los tribunales a personas y entidades que han sido adversamente afectadas por actuaciones del Estado o de entidades particulares y que presentan reclamaciones que pueden ser debidamente atendidas por el foro judicial. Véanse: Asociación de Maestros v. Pérez, Gobernador Int., 67 D.P.R. 848 (1947); Cerame-Vivas v. Srio. de Salud, 99 D.P.R. 45 (1970); Salas Soler v. Srio. de Agricultura, 102 D.P.R. 716 (1974).
El principio rector es que el tribunal ejercitará su discreción en uno u otro sentido, dependiendo de la trascendencia del derecho afectado y la importancia de los intereses en conflicto. Zachry International v. Tribunal Superior, 104 D.P.R. 267 (1975). (Enfasis suplido.)
De acuerdo a lo dispuesto anteriormente, concluimos que el señor Marrero Hueca tenía acción legitimada para formar parte del presente litigio. El mismo ha sufrido un daño real e inmediato como consecuencia de la conducta del Sr. Rosa Soto.
La presente acción tiene como propósito dirimir de una vez los derechos de las partes, de manera que la incertidumbre que impera en el Municipio de Toa Alta termine. Habiendo sido electo el Sr. Marrero Hueca conforme a las disposiciones de la Ley de Municipios Autónomos, y el Reglamento del Partido Nuevo Progresista, es innegable su derecho a formar parte en este caso.
Por estas razones, concluimos que no se cometió el primer error apuntado y, por el contrario, fue sabio del Tribunal de Primera Instancia así resolverlo.
El segundo error apuntado indica que cometió error el Tribunal de Primera Instancia al dictar sentencia declaratoria y al entrar a considerar dentro de la petición original aspectos jurídicos que sólo podían ser resueltos mediante el recurso de quo warranto. No le asiste la razón al Sr. Rosa Soto, y explicamos.
La sentencia declaratoria se rige por las disposiciones de la Regla 59 de las de Procedimiento Civil, 32 L.P. *788 R.A. Ap. III, R. 59. El propósito de esta regla es “proveer al ciudadano un mecanismo procesal de carácter remedial o profiláctico mediante el cual pueda anticiparse a dilucidar ante los tribunales los méritos de cualquier reclamación que en forma latente entrañe un peligro procesal en su contra. ” Charana v. Pueblo, 109 D.P.R. 641, 653 (1980).
La Regla 59.1 dispone:
“El Tribunal de Primera Instancia tendrá autoridad para declarar derechos, estados y otras relaciones jurídicas aunque se inste o pueda instarse otro remedio. No se estimará motivo suficiente para atacar un procedimiento o acción el que se solicite una resolución o sentencia declaratoria. La declaración podrá ser en ¡su forma y efectos, afirmativa o negativa, y tendrá la eficacia y vigor de las sentencias o resoluciones definitivas. El tribunal podrá ordenar una vista rápida de un pleito de sentencia declaratoria, dándole preferencia en el calendario. ” 32 L.P.R.A. Ap. III R. 59.1 (Supl. 1998).
El Tribunal Supremo tuvo la oportunidad de examinar la actual Regla 59 de las de Procedimiento Civil, supra, --al interpretar la anterior Ley de Sentencias Declaratorias— en Moscoso v. Rivera, 16 D.P.R. 481 (1954). En este caso, dicho foro indicó que, bajo esa regla, los tribunales tienen autoridad para dictar sentencias declaratorias en cuanto al estado de las personas y las relaciones jurídicas entre ellas. A pesar de que los primeros incisos de la actual Regla 59.2 parece enumerar taxativamente quiénes tienen derecho a solicitar el remedio, el último inciso —actualmente designado como inciso (c)~ dispone específicamente que la enumeración de los primeros incisos, que limita las sentencias declaratorias a litigios en tomo a contratos, testamentos, ordenanzas, estatutos o franquicias, “no limita ni restringe el ejercicio de las facultades generales concedidas en la [actual Regla 59.1, supra], dentro de cualquier procedimiento en que se solicite un remedio declaratorio, siempre que una sentencia o decreto hubiere de poner fin a la controversia o despejar una incertidumbre”. Regla 59.2 de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 59.2.
Por otro lado, el remedio del quo warranto, de origen inglés, se rige en Puerto Rico por las disposiciones de la Ley de Recursos Extraordinarios, codificada en 32 L.P.R.A. secs. 3391 y ss.
La See. 3391 define el quo warranto como un “auto por medio del cual el Estado Libre Asociado de Puerto Rico instituye un recurso con objeto de recobrar un cargo o una franquicia poseída por alguna persona o corporación”. El recurso se podrá instar, entre otras razones, “[cjuando alguna persona usurpare o ilegalmente ejerciere o desempeñare funciones de algún cargo público”. 32 L.P.R.A. secs. 3392. “[E]l Secretario de Justicia, o cualquier fiscal de la sala correspondiente del Tribunal Superior, ya obrando por su propia iniciativa, ya a instancias de otra persona, podrá radicar ante cualquier sala del Tribunal Superior una solicitud para que se instruya información de la naturaleza del quo warranto.... ”. El Secretario de Justicia, por lo tanto, no está obligado a iniciar el procedimiento, sino que está en el marco de su discreción el presentarlo o no. Esta discreción del Secretario de Justicia, sin embargo, ha implicado el Tribunal Supremo, puede no ser absoluta y podría haber ocasiones, como lo ha habido en diversas jurisdicciones norteamericanas, en que los tribunales han obligado al Secretario de Justicia a presentar el recurso. Todd v. Horton, Procurador General, 51 D.P.R. 298, 302 (1937).
Como indica Rivé Rivera, supra, “[cjualquier ciudadano tiene capacidad o standing, para ser relator e iniciar un procedimiento de Quo Warranto, aun en casos de interés público. Se entiende que el mero hecho de ser ciudadano lo capacita para cuestionar el ejercicio ilegal de un cargo público por parte de quien lo usurpa indebidamente. ”
Aunque el Secretario de Justicia ha indicado que el quo warranto es “el procedimiento adecuado para *789 atacar el derecho de una persona que reclama un cargo ‘so color de autoridad’ y lo desempeña defacto”, y el Tribunal Supremo ha indicado que es el recurso adecuado para “pedir la destitución de un funcionario municipal cuyo cargo se alega que está ejerciendo ilegalmente ”, esto no implica que sea el único recurso disponible. Volviendo a citar a Rivé Rivera, el recurso del quo warranto ha perdido importancia práctica, debido, sobre todo, a la luz de la propia jurisprudencia del Tribunal Supremo, que le ha ido restando exclusividad, y a la adopción de leyes especiales que conceden la facultad de atender cuestionamientos de la legitimidad de los funcionarios públicos a diversos organismos administrativos. 
De hecho, el Tribunal Supremo de Puerto Rico, en Hernández Agosto v. López Nieves, 114 D.P.R. 601, 611 (1983) —citando jurisprudencia federal— al analizar un argumento en dicho caso, determinó que el remedio adecuado era el quo warranto en lugar del injunction', que se puede solicitar un injunction o una sentencia declaratoria para cuestionar la ocupación de un cargo por una persona, en detrimento, como en dicho caso, del poder de confirmación del Senado.
En la situación que nos toca analizar, el Sr. Rosa Soto cuestiona la procedencia de haberse determinado el remedio mediante sentencia declaratoria y no mediante quo warranto. Aunque entendemos que este último hubiese sido un remedio que hubiera permitido atender y resolver adecuadamente la controversia en cuestión, eso no implica que hubiese sido el único remedio procedente en derecho. El hecho de que hubiese sido el mejor recurso no quiere decir que sea el único. ¿Dónde quedarían los derechos de una persona si el Secretario de Justicia decidiera no actuar? ¿Implicaría eso que la persona estaría entonces desprovista de un remedio? Una persona no puede depender, para validar sus derechos, de la voluntad de un tercero. Aun si pudiese presentarse un mandamus para tratar de obligar al Secretario de Justicia, es posible, como en el caso de Todd, previamente citado, que los tribunales no concedieran el remedio de mandamus que a esos efectos se solicite. El remedio de quo warranto, por lo tanto, no puede ser el único remedio disponible, razón por la que entendemos que la sentencia declaratoria es un recurso adecuado al caso de autos.
Como ha indicado el Tribunal Supremo, “[e]l poder de un tribunal para dictar sentencias declaratorias no está limitado a aquellos casos en que las partes, o una de ellas, tengan alguna causa de acción creada por alguna ley distinta a la ley de sentencias declaratorias, ya que, de establecerse tal limitación, quedaría destruido el propósito de la propia ley de sentencias declaratorias Moscoso v. Rivera, supra, a la pág. 489.
Como producto de nuestro análisis, opinamos que tampoco se cometió dicho error. Es cierto que el Tribunal de Primera Instancia pudo haber declarado los derechos de las partes mediante la Sentencia Declaratoria (como efectivamente lo hizo), y luego conceder el remedio solicitado mediante el recurso de injunction, proveyendo así un remedio inmediato. Sin embargo, ello no tiene mayor consecuencia al día de hoy, que no sea la lamentable situación de incertidumbre y desasosiego que aún vive la población de Toa Alta. Valga esto último como una reflexión nuestra, al considerar que en alguna medida, y con la mayor deferencia, la sentencia apelada nos parece “se quedó corta” en la provisión del remedio a que tenía derecho la parte interventora.
Ante el tercer error apuntado, y a los fines de dilucidar las alegaciones de las partes y el derecho que a esos efectos invocan, es necesario que incursionemos en la consideración de la Ley de Municipios Autónomos de Puerto Rico, el Reglamento del Partido Nuevo Progresista, así como en las Guías y Procedimientos para la Evaluación de Aspirantes a Candidatos de dicho Partido.
Para atender situaciones de esta naturaleza, la Ley de Municipios Autónomos en su Artículo 3.004 dispone:

"En caso de renuncia, el Alcalde la presentará ante la Asamblea Municipal por escrito y con acuse de 
*790
recibo. La Asamblea deberá tomar conocimiento de la misma y notificarla de inmediato al organismo directivo-local del partido político que eligió al alcalde renunciante. Esta notificación será tramitada por el Secretaria de la Asamblea, el cual mantendrá constancia de la fecha y forma en que se haga tal notificación, y del acuse de recibo de la misma.

Dicho organismo directivo local deberá someter a la Asamblea un candidato para sustituir al Alcalde renunciante dentro de los quince (15) días siguientes a la fecha de recibo de la notificación de la misma. Cuando el organismo directivo local no someta un candidato a la Asamblea en el término antes establecido, el Secretario de ésta notificará tal hecho por la vía más rápida posible al Presidente del partido político concernido, quien procederá a cubrir la vacante con el candidato que proponga el cuerpo directivo central del partido político que eligió al Alcalde renunciante.

Toda persona seleccionada para cubrir la vacante de un Alcalde que haya renunciado a su cargo deberá reunir los requisitos de elegibilidad establecidos en la see. 4101 de este título. La persona seleccionada tomará posesión del cargo inmediatamente después de su selección y lo desempeñará por el término no .cumplido del Alcalde renunciante.

El Presidente del partido político que elija al Alcalde notificará a la Comisión Estatal de Elecciones el nombre de la persona seleccionada para cubrir la vacante ocasionada por la renuncia del Alcalde para que la Comisión expida la certificación correspondiente."

De otro lado, dicha ley establece en su Art. 3.001 los requisitos con los cuales debe cumplir el aspirante a ocupar la vacante.
Además, el P.N.P. como parte de su reglamento, dispuso el proceso para evaluar los méritos y requisitos de los aspirantes a cargos públicos por elección. De igual forma, el Art. 79 del mencionado reglamento se encarga de apuntar qué personas no podrán ser consideradas para ocupar la posición vacante y los declara inhabilitados para ello.
Concurrimos con el Tribunal de Primera Instancia en que tanto la Ley de Municipios Autónomos como los reglamentos internos del P.N.P. establecen los criterios necesarios para resolver los hechos en este caso.
Al examinar aquello que consideramos medular a la solución del asunto -y que ha sido planteado como el tercer error- y luego de evaluar las estipulaciones de las partes y los documentos que obran en autos, podemos concluir que aun cuando entendemos que se apreció incorrectamente el dato que está contenido en el Inciso Dos (2) de las Determinaciones de Hechos Adicionales formuladas por el Tribunal de Primera Instancia -el cual es objeto de nuestro análisis en este escrito- el mismo no altera el resultado del caso.
La apreciación de la prueba por parte del tribunal a quo, es sustancialmente correcta, tanto es así que los hechos estipulados por las partes resultan ser muy ilustrativos a la hora de evaluar el resultado que se produjo mediante la sentencia dictada. Repasemos sólo algunos de ellos, a saber:
Estipulación número 4: “Que el 26 de febrero de 1999, el Secretario del Comité Municipal del Partido Nuevo Progresista en Toa Alta, expidió una convocatoria, por conducto del Secretario General del Partido Nuevo Progresista, Sr. José F. Aponte, citando a los miembros del referido Comité Municipal para una reunión extraordinaria a celebrarse el 11 de marzo de 1999, con el propósito de seleccionara la persona que llenaría la vacante de alcalde de dicho municipio. ”
*791 De la anterior estipulación se desprende inequivocamente que el Comité Municipal siempre reconoció que los procedimientos a efectuarse tenían que ser al amparo de la dirección general del Partido y por ello la convocatoria se efectuó por conducto del Secretario General del Partido Nuevo Progresista. Es una máxima harto conocida en derecho que quien puede lo más, puede lo menos. Si no, ¿de qué forma podríamos entender que al Secretario General del Partido se le reconozca su autoridad al momento de convocar la reunión por conducto de éste, pero de otro lado, se le pretenda negar su autoridad a la hora de tener que dejar sin efecto la reunión convocada? Más aún, cuando dicha cancelación fue motivada por la solicitud de reconsideración presentada por el señor Rosa Soto.
De las estipulaciones entre las partes, específicamente el inciso número 13, de forma expresa señala que el Comité de Evaluación del Partido Nuevo Progresista declaró al Sr. Rosa Soto como No Calificado desde el 11 de marzo de 1999 -previo a la reunión celebraba en la cual se seleccionó el señor Rosa Soto-.
El inciso 14 de dichas estipulaciones establece que el señor Rosa Soto solicitó reconsideración de la determinación del Partido el 15 de marzo de 1999, o sea, dos días antes de celebrar una elección al margen del Partido en el cual milita y con el cual se comprometió, bajo juramento, a respetar y acatar las disposiciones reglamentarias.
Por su parte, en la estipulación número 19, se recoge el hecho de que el señor Rosa Soto volvió a solicitar reconsideración ante el Directorio del P.N.P. Debemos destacar que aun cuando el señor Rosa Soto tramitaba la reconsideración ante el Directorio del P.N.P., ya había juramentado como Alcalde desde el 17 de marzo de 1999. Es preciso mencionar que el 6 de abril de 1999, el Comité Central del P.N.P. emitió una Resolución confirmando por unanimidad la determinación del Comité de Evaluación.
De hecho, por encontrarse pendiente la reconsideración solicitada por el señor Rosa Soto, no es hasta el 12 de abril de 1999 que el P.N.P. abrió el proceso de elección especial entre los candidatos cualificados por el Partido, en el que resultó ganador el señor Marrero Hueca.
De las Determinaciones de Hechos Adicionales formuladas por el Tribunal de Primera Instancia, sólo analizaremos los incisos número 2 y 4, por entender incorrecta la determinación del Tribunal de Primera Instancia. Y citamos:

“2. La reunión del comité Municipal, originalmente convocada para el día 11 de marzo de 1999 y luego cambiada para el día 17 de marzo de 1999 (Exhibit III de todas las partes) fue celebrada fuera del término de los quince (15) días de que habla el Art. 3.004 de la Ley de Municipios Autónomos. ”

No es correcta dicha determinación en vista de que la notificación efectuada el 26 de febrero de 1999, en lo referente a la renuncia del Sr. Angel Rodríguez Cabrera, resultó ser una notificación inoficiosa, porque originalmente la renuncia del señor Rodríguez Cabrera fue dirigida al Hon. Pedro Rosselló, Gobernador de Puerto Rico, de forma indebida, ya que la Ley de Municipios Autónomos dispone de forma clara e inequívoca que la misma debió ser remitida a la Asamblea Municipal, para que éstos, a su vez, entendieran en la misma y notificaran oficialmente al Comité Local del P.N.P., de forma tal que una vez esto ocurriera, comenzara a decursar el término de quince (15) días dispuesto por dicha ley. El envío de copia de carbón de la mencionada carta al Comité Local no podía ser la base para que éste convocara a elección especial, porque la Ley de Municipios Autónomos dispone que el término de quince (15) días no empieza a decursar, sino hasta tanto la Secretaria de la Asamblea Municipal notifique al organismo directivo local con constancia de la fecha y firma en que se haga tal notificación y del acuse de recibo de la misma.
*792 La notificación formal a dicho comité no se realizó hasta el 3 de marzo de 1999, medíante una comunicación dirigida al Vicepresidente del Comité Local, Sr. Marrero Hueca.
La incorrección en la determinación de hechos antes apuntada, sin embargo, no altera en forma alguna el resultado de la sentencia dictada porque lo medular en este caso son los requisitos con los que vienen obligados a cumplir los aspirantes y el ámbito de la facultad delegada al Comité Local mediante la Ley de Municipios Autónomos. Por lo tanto, independientemente que la elección del Alcalde en Propiedad se haga por la Asamblea Municipal dentro de los 15 días estatuidos por dicha ley o, en su defecto, mediante el proceso establecido por el organismo central, con posterioridad a dichos 15 días, el aspirante tiene que ser cualificado por el partido político conforme a sus guías y la reglamentación establecida para esos propósitos.
En cuanto al inciso 4 de las Determinaciones de Hechos Adicionales formuladas por el tribunal a quo, solamente merece nuestro comentario la indicación de que el señor Rosa Soto había sido descalificado, cuando lo correcto es decir que él simplemente no fue cualificado como candidato por el Comité de Evaluación del P. N.P. A los efectos de corroborar esta conclusión, basta examinar los hechos estipulados por las partes, específicamente en el inciso 13 de la Sentencia, así como la Resolución emitida por el Comité de Evaluación del P.N.P. el 11 de marzo de 1999, en la que se expresa que el señor Rosa Soto no está cualificado.
III
Pertinente a estos hechos es que discutamos los poderes de cada uno de los organismos en esta controversia.
Debemos comenzar por decidir si el P.N.P. tiene el poder de imponer requisitos para cualificar y/o habilitar a los aspirantes a los distintos puestos electivos y, en cuanto a este caso se refiere, a aquellos que interesen aspirar al cargo público de alcalde.
Como dijimos anteriormente, por ser un caso novel, no contamos con jurisprudencia que nos asista en la interpretación porque nuestra historia política y jurídica no ha enfrentado una situación de conflicto como la que ahora nos toca resolver. Aun cuando el comité local y el organismo central pertenecen al mismo partido político, y aun cuando la Ley de Municipios Autónomos establece una clara correlación entre el organismo local y el central —en aquellos casos en que el organismo local no actúa en primera instancia— no es menos cierto que esta es la primera vez que la discrepancia entre ambos debe dirimirse. Estamos convencidos, sin embargo, de que en cualquier situación de sustitución del incumbente, sea por el organismo central o por el organismo local, ambos están obligados por el reglamento del partido político, y a ninguno de los dos se le exime de cumplir con los requisitos que la colectividad entendió apropiados y por los cuales se rige.
En consecuencia, entendemos que el partido político sí puede establecer aquellos requisitos que sean cónsonos con su objetivo de buen gobierno y de sana política pública. E.U. v. San Francisco County Democratic Central Commitee, 489 U.S. 214 (1989).
En el caso de Díaz Delgado v. P.P.D., 121 D.P.R. 165 (1988), el Tribunal Supremo declaró no ha lugar el recurso presentado por no haberse agotado el trámite de revisión dentro del partido. Se resolvió, además, que el partido político es un organismo administrativo y viene obligado a observar estrictamente sus propios reglamentos. En la opinión disidente suscrita por el Juez Asociado, señor Rebollo López, se discute la violación de su propio reglamento por parte de un organismo administrativo. Analizando esta disposición a la luz de lo acontecido en el caso que nos ocupa, cabe interpretar que tanto el organismo local como el comité evaluador equivalen o vienen a ser organismos administrativos del partido político.
*793 A tenor con lo anterior, entendemos que los aspirantes a cualquier candidatura tienen que cumplir con el reglamento del partido político en cuestión, en este caso el del P.N.P., promulgado el 24 de agosto de 1997. A esos efectos el Reglamento del P.N.P. establece:

“ARTICULO 8: Obligación de Acatar Reglamentos, Acuerdos y Resoluciones

Todo miembro del Partido acatará y cumplirá los reglamentos, acuerdos y resoluciones aprobadas por los organismos rectores del Partido y servirá donde el Partido lo considere conveniente conforme a su preparación, experiencia y capacidad, siempre en armonía con lo dispuesto en este Reglamento. ”
Siendo ello así, todo aspirante viene obligado a cumplir con el reglamento del partido o en su defecto podría declararse inhábil conforme al Artículo 79 del Título 16 de dicho Reglamento, que establece las razones por las cuales se puede declarar inhábil a un aspirante a ser candidato, y citamos:

“Artículo 79: Inhabilidad Para Ser Candidato

No podrá ser candidato a cargo público electivo aquella persona que no cumpla con todos los requisitos que establece la Ley Electoral y el Reglamento de Primarias del Partido para el cargo que aspira, o que haya sido convicto de delito grave o menos grave que implique depravación moral o deshonestidad, o que se dedique a actividades contrarias a la moral o ala ley, o que esté inhabilitado por ley.

Ningún funcionario remunerado del Partido o cualquiera de sus organismos, podrá postularse a puesto electivo. ”

A tono con esta disposición, el Directorio proveerá un formulario que será contestado bajo juramento por todo aspirante a elección. El Comité de Evaluación revisará el formulario, los requisitos y méritos de cada aspirante y someterá sus recomendaciones al Directorio.
El instrumentar el proceso de cualificación de los aspirantes a los distintos puestos electivos es la razón de ser de la Junta Revisora del P.N.P. Las funciones de dicha Junta no pueden ser limitadas a las de simple cotejo de una lista de requisitos en la que se verifique si el aspirante presentó tal o cual documento, pues para eso no hace falta nombrar Junta alguna. Innegable es que la función principalísima de dicha Junta lo es el determinar si los aspirantes están o no cualificados para la posición por la cual interesan competir. El señor Rosa Soto debió demostrar una de varias alternativas para salvar la inhabilitación basada en dicho Artículo.
- Que el requisito no es válido.
- Que el requisito del organismo central no le aplica al organismo local.
- Que el organismo local puede ir por encima del organismo central y actuar totalmente independiente de los postulados, reglamentos, normas y guías del partido al cual pertenece.
Ninguna de estas variantes fue probada por el apelante, señor Rosa Soto.
Al final de cuentas, todo aspirante que se somete a un procedimiento de evaluación para ser cualificado por su partido tiene, en última instancia, la posibilidad de que el dictamen le sea adverso y resulte que no cualifica para esa posición.
*794 Ante su inconformidad con el dictamen del P.N.P., el señor Rosa Soto podía solicitar reconsideración como efectivamente lo hizo, y si aún así discrepaba pudo acogerse al amparo de los tribunales, lo cual evidentemente no hizo. El señor Rosa, si se sintió agraviado por la decisión del partido, debió acudir al Tribunal para que en el ejercicio de su poder institucional pasara juicio sobre la decisión del partido de no cualificarlo, y de esta forma se determinara si los requisitos del partido político eran razonables y si la evaluación de su aspiración fue adecuada, justa y dentro del marco de la ley. Díaz Delgado v. P.P.D., supra, a la pág. 176. Nuestro ordenamiento jurídico posee los vehículos procesales adecuados para dilucidar este tipo de agravio. Pero el señor Rosa Soto no solamente no impugnó el procedimiento establecido por el partido político, sino que se sometió a él comprometiéndose a acatar el mismo bajo juramento.
El partido político que originalmente eligió al alcalde renunciante es el que tiene que elegir a su sucesor. No debe haber duda de que ese mismo partido político tiene autoridad para adoptar aquellas reglas y reglamentos que resulten necesarias para el descargo de sus responsabilidades y para regular todo aquello que no estuviere expresamente regulado en la Ley de Municipios Autónomos, que fuera congruente con sus propósitos. Si no fuera así, en cada Municipio tendríamos “agentes libres” que no respondiesen a partido político alguno ni representasen necesariamente los postulados del partido político que ganó la alcaldía municipal.
Si vemos el desarrollo del Derecho Constitucional nos damos cuenta de que la dirección ha sido hacia otorgarle inherencia a los partidos políticos porque éstos cumplen una función pública necesaria en nuestro modo de organizar el gobierno. Nos parece que constituye un requisito indispensable que el sucesor de un alcalde renunciante sea miembro bonafi.de del mismo partido político que eligió al alcalde renunciante y, por lo tanto, habilitado por dicho partido para el puesto. Concluir lo contrario y pretender decir que el aspirante sólo tiene que cumplir con la Ley de Municipios Autónomos como aduce el señor Rosa Soto, nos llevaría a la posibilidad de que el comité local, por ejemplo, pueda elegir a una persona a quien se le impute la comisión de un delito (aunque no haya sido sentenciada), y/o de conocida afiliación política a un partido político distinto al que ganó la elección en ese Municipio, por el sólo hecho de reunir los requisitos de la Ley de Municipios Autónomos, aunque no los del partido al cual corresponde la posición. Eso ejemplifica lo insostenible de tal proposición.
No tenemos reserva mental de que las guías y reglamentos son esenciales y vitales en todos los procesos, y lo que opera es una combinación del método de selección de candidatos, entre el organismo local y el central.
El partido político en esta controversia convocó a una elección y posteriormente emitió la decisión de cancelarla, precisamente para atender de forma adecuada la petición de reconsideración del señor Rosa Soto. En respuesta, el señor Rosa Soto tomó otro curso de acción y decidió promover una elección por cuenta propia. Estos hechos no dejan duda de que el señor Rosa Soto se alejó de la directriz del partido que dice representar.
Con su conducta, el señor Rosa demostró inequívocamente que se apartó de las normas del Partido y actuó en contravención a sus postulados, específicamente del Artículo 83 del Reglamento de P.N.P. que lee:

“ARTICULO 83: Normas de Conducta de los Candidatos

Toda aquella persona nominada para ocupar o que ocupe un cargo electivo en representación del Partido, tendrá que acatar las normas de conducta dictadas por el partido. Asimismo, se abstendrá de llevar a cabo cualquier acción que desacredite la imagen del Partido ante el pueblo. Sus actuaciones siempre serán cónsonas con su obligación de cumplir los preceptos programáticos e ideológicos del Partido. Este compromiso tiene la naturaleza de un juramento que está implícito en la aceptación de una candidatura y el 
*795
ocupar cualquier cargo electivo. ”

De otro lado, el caso de Díaz Delgado v. P.P.D., supra, es ilustrativo a la controversia ante nos, y de hecho en el voto disidente suscrito por el Juez Asociado, Hon. Negrón García, se discute la importancia de la adopción de un reglamento que garantice la pureza de los procedimientos. Entre los extremos de importancia que deben ser considerados se encuentra el determinar fecha, hora y lugar donde se efectuará el proceso de votación, foro adecuado para impugnar las mismas, derecho de representación efectiva en las etapas críticas del proceso de selección, registro y proceso de votación y escrutinio, y votación libre y secreta. En el proceso de selección celebrado por el señor Rosa Soto cabe preguntamos: ¿Cómo se garantizó a los demás aspirantes en la selección su participación y representación, máxime aun cuando dichos aspirantes tal vez se abstuvieron de participar en ese proceso en acatamiento de la cancelación del mismo anunciada por el Secretario General del Partido? Por lo tanto, el método, aunque interno y delegado al organismo local, tiene que estar sujeto a unas garantías que aseguren que los resultados reflejan fielmente la opinión mayoritaria.
Interpretando y aplicando lo apuntado en dicha opinión por el Hon. Negrón García, a los hechos de este caso, el señor Rosa Soto no podía hacer caso omiso a los efectos procesales del propio reglamento del partido. El señor Rosa entremezcló y vició su aspiración.
A tenor con lo anteriormente expuesto son inescapables las siguientes conclusiones:

“A. El señor Rosa Soto se sometió al proceso establecido por el P.N.P., bajo juramento. Luego abandonó ese procedimiento, el cual previamente juramentó seguir. Renunció al derecho que ahora alega tener.

B. La Asamblea pautada para el 17 de marzo de 1999 por el organismo local, fue convocada por conducto y al amparo del Secretario General del Partido, lo que evidentemente es demostrativo de que tanto el señor Rosa Soto, como el organismo local reconocen la inherencia del P.N.P. en esta etapa. Sin embargo, hicieron caso omiso a la cancelación de la misma, la cual había sido ordenada por el propio partido. ”

El señor Rosa Soto incurrió en una conducta contradictoria al conducirse por dos procedimiento paralelos. El apelante, por un lado, sometió su solicitud como aspirante a candidato a la posición de Alcalde de Toa Alta ante el Comité de evaluación del P.N.P. Cuando dicho comité no lo cualificó como tal, sometió una Moción de Reconsideración. Al mismo tiempo el señor Rosa Soto celebró, con sus seguidores, una reunión en la que lo seleccionaron como alcalde, sin éste estar cualificado debidamente, conforme al reglamento, normas y guías aplicables del partido, y sin considerar que dicha reunión había sido cancelada oficialmente por el P.N.P. Además, y a espaldas del partido, prestó juramento como Alcalde.
Evidentemente, resulta de esta prueba que la duplicidad de los procedimientos seguidos por el señor Rosa Soto menoscaba el proceso general y obstaculiza la función de elegir y formar gobierno. Prueba de la confusión causada es la paralización que ha sufrido este proceso.
No debe haber duda de que no estamos ante una descalificación (lo cual presupone que en algún momento la persona fue cualificada, pues eso nunca ocurrió en este caso). Lo que nos ocupa es la no cualificación y/o inhabilitación del aspirante hecha por el partido político.
Desde sus inicios, el partido político ha sido consistente en su posición de que el aspirante, Sr. Rosa Soto, esta inhabilitado para ser candidato.
En la resolución emitida por el Comité de evaluación del P.N.P. el 11 de marzo de 1999, se señala que *796 dicho comité lo que tiene ante su consideración es la notificación de intención del señor Rosa Soto para aspirar a ser candidato en la elección especial para cubrir la vacante de Alcalde por el Municipio de Toa Alta. De hecho en su parte pertinente la resolución en el caso del señor Rosa, lee así:
"El Comité de Evaluación tiene ante su consideración la “Notificación de Intención de Aspirar a Candidato en la Elección Especial Para Cubrir la Vacante de Alcalde por el Municipio de Toa Alta” (la “Notificación de Intención ”) presentada por el señor David Rosa Soto.
Cualquier aspirante puede cumplir los requisitos establecidos en el Artículo 3.001 de la Ley de Municipios Autónomos; sin embargo, si no pertenece al partido que eligió en primera instancia al alcalde renunciante, aun cuando cumpla con los requisitos de la Ley de Municipios Autónomos, no podría ser candidato a ocupar el puesto.
Los jueces, al decidir controversias, además de evaluar los hechos que se presentan, estamos obligados a evaluar la consistencia de la conducta de aquellos que solicitan remedios. En el escrito del señor Rosa Soto al Directorio del P.N.P. apelando la decisión de su caso, éste señala que la decisión de la cual pide reconsideración es aquella que establece que no está cualificado para ser candidato para cubrir la vacante de Alcalde en el municipio de Toa Alta. Para nada plantea que haya sido descualificado como candidato, por lo que no podemos menos que concluir que el señor Rosa reconoce -que a ese momento- era todavía un aspirante a la candidatura. Demos una mirada al escrito de apelación del señor Rosa ante el Directorio del P.N.P., el cual se lee:

“1. El 11 de marzo de 1999 sin darme la oportunidad de aclarar cualquier duda, el Comité de Evaluación de Candidatos resolvió arbitrariamente recomendar a este directorio que yo no estoy cualificado para ser candidato para cubrir la vacante de Alcalde en el Municipio de Toa Alta.

De lo anterior podemos colegir que el señor Rosa Soto siempre tuvo claro que era requisito indispensable que el organismo central lo cualificara como candidato. Debemos preguntamos porqué en aquella etapa del proceso no acudió a buscar la protección del Tribunal si realmente consideraba que la actuación del partido estaba fuera del marco legal o en su defecto era ultra vires.
Doctrinas conocidas como las de manos limpias y la de no actuar contra sus propios actos son herramientas de uso consuetudinario al dirimir controversias y en este caso resultan altamente significativas en su aplicación. Vélez Cuebas v. Cancel, 88 D.P.R. 220 (1963); Negrón v. Municipio de San Juan, 107 D.P.R. 375 (1978) y El Vocero de P.R. v. Hernández Agosto, 133 D.P.R. _ (1993), 93 J.T.S. 80.
En el caso de Pardo v. Sucn. Stella, 145 D.P.R. _ (1998), 98 J.T.S. 80, el Tribunal Supremo señala que:
“El principio de derecho de que a nadie le está permitido ir contra sus propios actos tiene su fundamento en el cuadro general de situaciones jurídicas cuya firmeza descansa en la protección concedida a la confianza en la apariencia. J. Puig Brutau, Estudios de Derecho Comparado, Barcelona, Ediciones Ariel, 1951, pág. 115. Lo que se veda es que un litigante adopte una actitud que le ponga en contradicción con su anterior conducta. L. Diez Picazo, La doctrina de los propios actos, Barcelona, Bosh, 1963, pág. 109.” (Enfasis suplido.)
En Int. General Electric v. Concrete Builders, 104 D.P.R. 871 (1976), a la pág. 877, el Tribunal Supremo resolvió que “[l]a conducta contradictoria no tiene lugar en el campo del Derecho, y debe ser impedida”. Esta norma jurisprudencial fue reiterada en el caso de Cervecería Corona v. Commonwealth Ins. Co., 115 D.P.R. *797 345 (1984), a la pág. 351.
Innegable es el hecho de que el señor Rosa Soto tramitó dos procesos paralelos con implicaciones distintas.
De otro lado, si el señor Rosa Soto estaba inconforme con la determinación efectuada por el P.N.P. de no cualificarlo, y en su consecuencia entendió que se le había inhabilitado como candidato, con requisitos que él consideró improcedentes por no estar tácitamente dispuestos en la Ley de Municipios Autónomos. ¿Por qué en lugar de acudir al Tribunal para impugnar dicha determinación y demostrar que erró el organismo central al imponerle tales o cuales condiciones, se fue y juramentó un cargo para el cual no se le había cualificado?
Es inescapable la conclusión de que el señor Rosa Soto estaba consciente que debía someterse al proceso que el partido político dictó, y tanto es así, que solicitó reconsideración dentro de dicho proceso. ¿Por qué entonces se detuvo en la persecución del derecho que argumenta le asistía? Contrario a lo anterior, el señor Rosa escogió el camino que le resultaba más fácil y se lanzó a una elección y juramentación del cargo de Alcalde al margen del partido político que obtuvo la posición en ese Municipio en las pasadas elecciones generales. ¿O es que acaso renunció al derecho que ahora pretende alegar le cobija? Aun cuando discrepamos que tuviere ese derecho tan amplio e ilimitado que invoca, tendríamos que forzosamente concluir que renunció al mismo. Salvo cuando la ley expresamente lo prohíbe, o lo limita, los derechos son renunciables y transigibles. 
El párrafo segundo del Artículo 4 del Código Civil de Puerto Rico, 31 L.P.R.A. see. 4, preceptúa que los derechos concedidos por las leyes son renunciables a no ser esta renuncia contraria a la ley, el interés o el orden público, o en perjuicio de tercero, Eastern Sands, Inc. v. Roig Comm. Bank, 140 D.P.R. _ (1996), 96 J. T.S. 66.
Entendemos que el análisis de la situación de hechos y de derecho realizada por el señor Rosa Soto es incorrecta, pero aun si tratáramos de entender dicho análisis, el mismo sería insalvable por entender que con su conducta, renunció tácitamente a sus derechos.
Todo lo anterior es demostrativo de que el señor Rosa Soto no actuó de buena fe. En el caso de Berrios v. U.P.R., 116 D.P.R. 88 (1985), a la página 98, el Tribunal Supremo interpreta el alcance del término “buena fe".
Lejos de utilizar el procedimiento de ley y orden establecido por nuestro sistema de gobierno, se tomó la ley en sus manos y en contra del procedimiento establecido, celebró una elección a espaldas del partido -a quien pertenece la posición- y juramentó como alcalde, a la vez que apelaba ante el Directorio del partido la decisión de no cualificarlo. ¿De qué forma debe aceptar este Tribunal esa conducta cuando en la declaración jurada presentada ante el organismo central juró acatar las disposiciones del reglamento del P.N.P. y, por ende, aceptó el procedimiento ante dicho organismo? Ciertamente el señor Rosa Soto, toma en forma liviana la seriedad de juramentar. Jura que se somete al partido, luego da la espalda y jura como Alcalde. No vemos como es posible con estos hechos que podamos, en forma alguna, conceder la razón al apelante. Ciertamente no la tiene.
IV
Teniendo en mente lo ocurrido, entremos ahora a analizar los límites del poder que ejerce el organismo central vis a vis los poderes delegados al organismo local.
Los organismos centrales de los partidos políticos establecen unos parámetros a los que deben adherirse no *798 sólo los miembros del partido, sino todo organismo local. Esas directrices generales son parte de la filiación y responden a los principios o postulados para gobernar en forma ordenada.
Atendiendo el hecho de que el organismo local está más cerca de la comunidad que sirve y de los aspirantes a los distintos puestos locales, resulta apropiado y conveniente que el organismo local tenga la primera opción para elegir los sucesores de los puestos electivos. Ese es realmente el espíritu de la Ley de Municipios Autónomos.
Pero esta delegación del poder de escoger no es, ni puede ser, absoluta, sino que está limitada por unas directrices generales que debe cumplir todo organismo local.
El organismo central en esa primera etapa no impone ni selecciona candidatos, sino que meramente los cualifica para asegurarse de que cumplan con los principios y valores que el partido requiere. Dentro de esos candidatos debidamente cualificados por el partido, el organismo local tiene la potestad de elegir al que entienda que mejor los representa.
No puede, sin embargo, el organismo local desafiliarse vía fíat administrativo del partido político al que pertenece y actuar en un vacío, con normas propias, desembarazado de lo que establece el organismo central para todos sus organismos locales y municipios. Ello equivaldría a fomentar el caos, el desorden y la actuación desarticulada que no resiste el más elemental de los análisis.
Las opciones que nos ofrece la Ley de Municipios Autónomos, según el Ledo. Pedro Delgado, representante legal de la Comisión Estatal de Elecciones, son tres (3), las cuales consideramos en nuestra evaluación, a saber:
1. Podría prevalecer la decisión del organismo directivo local.
2. Podría prevalecer la determinación de dicho organismo siempre que la persona que éste seleccione cumpla con todos los requisitos del partido político al cual pertenezca, toda vez que presuntamente, los cuerpos locales no operan en el vacío, sino como parte de una organización cuyos dictámenes, reglas o reglamentos tienen la obligación de acatar.
3. Podría prevalecer la decisión del cuerpo directivo central, independientemente de que el candidato designado por el organismo local cumpliera con todos los requisitos dispuestos por el partido político.
Nuestra discusión anterior sobre los parámetros de la decisión del organismo local, nos lleva a descartar la primera opción citada, pues constituiría un ente ambulatorio, disociador, que no responde a otra autoridad que la propia.
La tercera opción nos alejaría de la dirección legislativa al aprobar la Ley de Municipios Autónomos y sustraer poderes delegados en primera instancia a los organismos locales.
Por consiguiente, la opción que a todas luces es la más razonable es la segunda, la cual establece un balance adecuado entre las directrices generales de un organismo central y el ejercicio de poderes regulados del organismo local. Tal armonía entre los poderes constitucionales reconocidos a los partidos políticos y la delegación de poderes a los municipios a través de la Ley de Municipios Autónomos es el balance que en equidad debemos sostener.
*799 Parafraseando lo expresado por el Juez Asociado, señor Negrón García, en el caso de Calcador Berrios v. Ramírez Pantojas, supra, debemos ser conscientes de que cuando se aprueban las leyes no se agotan todas las posibilidades de aplicación o interpretación, correspondiendo a los tribunales en determinadas y específicas situaciones de hecho, interpretarlas y aplicarlas de forma cónsona con la organización y orden social en que nos desenvolvemos como grupo social.
Con las consideraciones expuestas, no podemos menos que concluir que el tribunal apelado, en términos generales, justipreció adecuadamente la prueba presentada y que la misma es suficiente a los fines de decretar los derechos de las partes.
V
Por todo lo antes expuesto confirmamos la sentencia emitida por el Tribunal de Primera Instancia, Sala Superior de Bayamón.
No obstante lo anterior y en el mejor ánimo de mantener la paz y el sosiego, instruimos a los abogados de las partes a que orienten a sus respectivos representados en el sentido de que esta sentencia no será ejecutable hasta que advenga final y firme y nuestro mandato sea remitido al Tribunal de Primera Instancia. Véase, Valenciano v. Santander Mortgage Corp., 146 D.P.R. _ (1998), 98 J.T.S. 159.
Notifíquese inmediatamente por facsímil, y por correo ordinario.
Así lo pronunció y manda el Tribunal y lo certifica la señora Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General
ESCOLIOS 2000 DTA 31
1. El Artículo 3.004 de la Ley de Municipios Autónomos, 21 L.P.R.A. see. 4104, dispone que el alcalde renunciante presentará su renuncia por escrito ante la Asamblea municipal, quienes a su vez, notificarán al Comité Local, con acuse de recibo, para que dentro de los quince (15) días siguientes al recibo de dicha notificación, procedan a seleccionar el sustituto.
2. Al amparo de esta doctrina, y en ausencia de un estatuto que expresamente confiera legitimación activa a ciertas personas, es esencial para la parte que solicita un remedio judicial que pruebe: (1) que ha sufrido un daño claro y palpable; (2) que el daño es real, inmediato y preciso y no uno abstracto o hipotético. Además, tiene que demostrar (3) que existe conexión entre el daño sufrido y la causa de acción ejercitada y que (4) la causa de acción surge bajo el palio de la constitución o de una ley.
3. Véase, David Rivé Rivera, Recursos extraordinarios, Sari Juan, Programa de Educación Jurídica Continua, Facultad de Derecho, Universidad Interamericana de Puerto Rico, 2da éd., 1996, pág. 277.
4. Op. Sec. Just. Núm. 8 de 1961.
5. Pueblo v. Oliveras, 33 D.P.R. 743 (1924).
6. Véase, Rivé Rivera, supra, a las págs. 268-269, 271.
7. Artículo 54, Reglamento del P.N.P., aprobado el 26 de junio de 1994. Acogido como Artículo 53 en el reglamento aprobado el 24 de agosto de 1997.
*800 8. Sobre este tema véase Calcador Berríos v. Ramírez Pantojas, 121 D.P.R. 491 (1988), opinión Juez Asociado, señor Negrón García; Díaz Delgado v. P.P.D., 121 D.P.R. 165 (1998).
9. Sobre el tema de aspirantes y candidatos, véase el caso de Calcador Berríos v. Ramírez Pantojas, 121 D.P.R. 491 (1988).
10. Ramos Rivera v. E.L.A., (T.S. 1999); Ponce Gas Service Corp. v. J.T.R., 104 D.P.R. 698 (1976).
11. El formulario sometido por Rosa al PNP incluye una declaración jurada del propio Rosa en la cual expone en parte que “[t]oda la información que aparece en dicha notificación es correcta a mi mejor entender y conocimiento sin que me conste nada contrario y no he omitido información o material relevante” y “acataré las disposiciones del Reglamento del Partido Nuevo Progresista”.