Hon. Carlos J. Calcador Berríos, demandante y recurrente, *v.* Rosa M. Ramírez Pantojas, Alba I. Rivera Ramírez, Comisión Estatal de Elecciones, demandadas y recurridas.

*Número:* RE-88-212      *Resuelto:* 26 de mayo de 1988

*José Juan Nazario De la Rosa* y *Juan Santiago Nieves,* de *Nazario, Santiago y De León,* abogados del recurrente; *Ada Rosa Juarbe,* abogada de las recurridas Rosa Ramírez Pantojas y Alba Rivera Ramírez; *Agustín Mangual Hernández,* abogado de la recurrida, Comisión Estatal de Elecciones.

## RESOLUCIÓN

Es un principio cardinal fundamental de nuestro sistema representativo democrático que el pueblo debe ser el que escoja a quienes quiere que lo gobierne. Este principio se puede menoscabar o socavar tanto mediante una limitación de las personas que pueden ser electas como del derecho al voto. Tomando esto en consideración y el hecho de que la codemandada Rosa María Ramírez Pantojas tiene la intención actual de aspirar genuinamente al cargo, y que el tribunal de instancia en su sentencia ha ordenado específicamente "a la codemandada Hon. Alba I. Rivera Ramírez que se abstenga de aspirar, aceptar o juramentar al cargo de Representante por el Distrito Núm. 3 de San Juan durante el próximo cuatrienio", "no debemos coartar la expresión de la voluntad de los electores que han dado su endoso a [Rosa María Ramírez Pantojas], siendo nuestro deber promover que dicho electorado tenga las mayores alternativas de expresión de su

voluntad de manera que sea dicho electorado quien juzgue la buena fe e intenciones de la candidata". Se deniega el recurso.

Lo acordó el Tribunal y certifica el señor Secretario General. El Juez Asociado Señor Negrón García emitió voto disidente, al cual se une el Juez Asociado Señor Hernández Denton. El Juez Asociado Señor Rebollo López, aun cuando no suscribe en su totalidad los argumentos y fundamentos expuestos en el voto disidente emitido por el Juez Asociado Señor Negrón García, al igual que éste expediría el auto de revisión solicitado y dictaría sentencia revocatoria de la emitida por el Tribunal Superior de Puerto Rico, Sala de San Juan, que descalifica como candidata al cargo de Representante por el Distrito Núm. 3 de San Juan a la codemandada recurrida Rosa María Ramírez Pantojas.

(*Fdo.*) Bruno Cortés Trigo
*Secretario General*

—O—

Voto disidente del Juez Asociado Señor Negrón García, al cual se une el Juez Asociado Señor Hernández Denton.

En nuestro sistema de adjudicación aspiramos siempre a una mayor aproximación al ideal de la verdad y de la justicia; con más vehemencia en la aplicación de la Ley Electoral de Puerto Rico y en la axiología neutral que la apuntala. De esa forma evitamos que los principios rectores que la inspiran se conviertan, al decir de Natalio Botana, en "máscaras o espejos deformantes: [que] esconden cosas y condicionan la representación política".[1] Después de todo, las "leyes electorales sirven para alcanzar ciertos objetivos (valores) y para eludir otros: son valiosas, regulares o desvaliosas".[2] Al juz-

---

[1] Véase N. Botana, *Las Leyes Electorales,* citado por N.P. Sagües, *Régimen Electoral y Legitimidad Política,* 1983-C Rev. Jur. Arg. La Ley 781 (1983).

[2] Sagües, *supra.*

gar, es misión por excelencia del Poder Judicial imprimirle la máxima escala valorativa.

El silencio y la imperfecta disposición estatutaria en cuanto al dolo y fraude, como razones de descalificación de un candidato a un puesto electivo, no son óbices para sostener esta causa de acción. "[E]l legislador no puede anticipar nunca todas las posibilidades imaginables en el elenco de situaciones en que la dinámica y conducta humanas se desenvuelven." *P.S.P. v. Com. Estatal de Elecciones*, 110 D.P.R. 400, 429 (1980). El interés constitucional de poder participar como aspirantes o candidatos en un proceso electoral, "[n]o es absoluto ni existe el alegado derecho fundamental a ser candidato a un puesto electivo". *García v. Luciano*, 115 D.P.R. 628, 630 (1984); *Democratic Party v. Tribunal Electoral*, 107 D.P.R. 1, 25 (1978). Si un aspirante o candidato electo no cumple con los requisitos constitucionales y legales, o viola cualesquiera de sus disposiciones electorales, se expone a ser judicialmente descualificado. *Tonos Florenzán v. Bernazard*, 111 D.P.R. 546 (1981); *García v. Luciano*, supra, pág. 630.

A través de este prisma, el decreto judicial del Tribunal Superior, Sala de San Juan (Hon. Pedro López Oliver, Juez), plasmado en su respetable Sentencia de 18 de mayo de 1988, es parcial e inconcluso. No reinvindica totalmente los valores constitucionales de integridad, pureza, legitimidad e imparcialidad declarados en el Art. 1.002 de la Ley Electoral de Puerto Rico, 16 L.P.R.A. sec. 3002. Para darles vigencia debimos expedir el auto, modificarla y, como remedio ineludible, descualificar a la Sra. Rosa M. Ramírez Pantojas como aspirante a la nominación de Representante por el Distrito Núm. 3 de San Juan en los procedimientos de primarias internas del Partido Nuevo Progresista (P.N.P.) a celebrarse el 12 de junio de 1988.

Reproduzcamos la cronología fáctica que nutre este singular drama conforme con las determinaciones de hecho e

inferencias de la ilustrada sala sentenciadora, según complementadas por nuestro análisis integral apelativo de la prueba documental.[3]

## I

Carlos J. Calcador Berríos, incumbente en el Distrito Núm. 3 de San Juan a la Cámara de Representantes por el P.N.P., durante junio de 1987, participó en el proceso de selección interna de dicho partido y resultó nominado para el mismo cargo. Alba Iris Rivera Ramírez, conocida públicamente como *Albita Rivera* —hija de Rosa María Ramírez Pantojas— es al presente senadora por dicha agrupación política.

Para esa época, ella y varios ciudadanos llegaron a la conclusión de que las labores del representante Calcador Berríos no fueron satisfactorias. Por tal motivo, ella estimó oportuno abstenerse de postularse nuevamente para un escaño senatorial y optó por aspirar a representante por el mencionado Distrito Núm. 3. A tales efectos, a finales de 1987 inició activamente su campaña. Como insignia escogió un "coco" con la frase sobrepuesta de "Estoy con Albita". Conjuntamente se hicieron banderas, rótulos y pasquines, los cuales distribuyeron por todo el precinto. Toda esta propaganda contenía el símbolo de referencia y, en algunos, su retrato.

Así las cosas, durante ese período se rumoró que el Partido Popular Democrático (P.P.D.) podría impugnar su candidatura por razones de residencia. La senadora Rivera Ramírez se reunió con el Comisionado Electoral del P.N.P. y sus abogados. Transcurrió el tiempo. En vista de que se

---

[3] Sobre el particular, conocida es la norma de que en la etapa apelativa estamos en iguales condiciones que los foros de instancia para apreciar la prueba documental y arribar a nuestras propias conclusiones. *Torres Arzola v. Policía de P.R.*, 117 D.P.R. 204 (1986).

aproximaba el 15 de marzo de 1988 —fecha límite para la presentación de la declaración de intención de aspirantes a puestos electivos— por recomendación del referido Comisionado Electoral desistió a esa nominación. Comenzó entonces un proceso para reclutar otros candidatos que pudieran correr en las primarias contra Calcador Berríos. La búsqueda fue infructuosa.

Ante la ausencia de candidatos, su señora madre Rosa María Ramírez Pantojas se ofreció. Poseía vasta experiencia en el campo político y como afiliada al P.N.P. había participado activamente en ese precinto. Por años su residencia fue y ha sido un comité de campaña.

El 15 de marzo de 1988 presentó ante la Comisión Estatal de Elecciones el formulario informativo requerido por ley. En el formulario informativo usó el nombre de *Rosín (Albita) Ramírez* y manifestó su intención de participar, aunque juró con su nombre oficial. Sin embargo, *usó la misma insignia que estaba utilizando en su campaña previa su hija Rivera Ramírez.* Ese mismo día, esta última *"celebró una conferencia de prensa en la cual, en esencia, señaló que no daría a la oposición la oportunidad de acudir a los tribunales; que su señora madre había radicado su candidatura por el escaño representativo número 3 de San Juan, que después que su señora madre fuera electa en las primarias y fuera electa nuevamente el 8 de noviembre de 1988 renunciaría al escaño, procediendo el partido a nombrar la sucesora, asegurando a los periodistas que ella sería la seleccionada.* Informó además que haría toda la campaña a favor de su madre y confirmó que dicha candidatura era lo que se conoce como una 'candidatura de agua'"*. (Énfasis suplido.) Anejo I, pág. 7.

Aunque su madre Rosa M. Ramírez Pantojas no estuvo presente en dicha conferencia, de la prueba razonablemente inferimos que desde su incepción en todo momento estuvo concientemente en connivencia y de acuerdo con su hija Ri-

vera Ramírez para realizar el plan preconcebido de postularse y, de resultar electa, renunciar a su favor al escaño. Abona a esta conclusión la apreciación del foro de instancia de que "podríamos hacer tal inferencia, dada la estrecha relación familiar que existe entre madre e hija y por el hecho de que tampoco tenemos evidencia de que la codemandada, Rosa María Ramírez Pantojas, negara las manifestaciones de su hija". Anejo I, pág. 6.

Pocos días después de esta conferencia de prensa, la senadora Rivera Ramírez se percató del alcance de sus expresiones y de que sus propósitos eran indebidos. Posteriormente estuvo hospitalizada. Durante todo este período y hasta el 11 de mayo —fecha de la celebración de la vista judicial en el caso de autos— reflexionó. Como resultado, "cambió de parecer sobre sus intenciones de que su señora madre fuera una 'candidata de agua'". Anejo I, pág. 8. Bajo juramento testificó "que *reconoce que ha perdido la oportunidad de aspirar al cargo de Representante por el Precinto 3 de San Juan y que está trabajando activamente como directora de campaña de su señora madre con el propósito de que ésta ocupe la posición*". (Énfasis suplido.) Anejo I, pág. 6.

Aproximadamente dos (2) semanas antes, previa reunión de líderes del precinto en donde ambas estuvieron presentes, se determinó que no se utilizarían las banderas ni los carteles antes usados que contenían imágenes y expresiones referentes a Rivera Ramírez. Se comenzó la planificación de una campaña que proyectara la imagen de Rosa María Ramírez Pantojas. La campaña no se llevó con todo vigor, pues ellas dedicaron todos sus esfuerzos al proceso de recusaciones. La señora Ramírez Pantojas ha declarado públicamente que si es electa no dejaría el escaño "a su hija". Anejo X, pág. 115.

## II

No albergamos dudas de que los hechos reseñados revelan que Alba Iris (Albita) Rivera Ramírez y su madre Rosa M. Ramírez Pantojas, consciente, voluntaria, premeditadamente y en común acuerdo, planificaron toda la estrategia para la nominación de ésta como aspirante al cargo de Representante por el Distrito Núm. 3 de San Juan. De esa forma, por mediación de su madre, competiría para esa nominación sin estar cualificada, bajo la creencia de que constitucionalmente estaba impedida por carecer del requisito de residencia. Estos planes se iniciaron inmediatamente y tuvieron como efecto a corto y a largo plazo obligar la celebración de primarias a través de una aspirante ficticia.(4)

Surge del documento oficial denominado *Formulario informativo para aspirantes a puestos electivos (intención de candidatura)* que Rosa María Ramírez Pantojas, sin reservas, usó acomodaticiamente el sobrenombre ficticio de "Albita", denominación ajena a toda su realidad personal y circunstancial, pública y privada. En la consecución de ese fin, presentó además ante la Comisión Estatal de Elecciones, como insignia, identificación de papeleta y, como símbolo de campaña, un "coco" con el lema de "Estoy con Albita". La estrategia política publicitaria era y es evidente: evocar en los electores frente al adversario Calcador Berríos el nombre de su hija Albita Rivera como la candidata en propiedad.

Más aún, la campaña publicitaria desplegada incluía un retrato de la candidata real tras bastidores Albita Rivera. Toda esta prueba testifical y documental es demostrativa de que ella de facto era, desde noviembre de 1987 hasta la celebración de la vista judicial el 11 de mayo de 1988, la candi-

---

(4) Albita Rivera *admitió* en la conferencia de prensa celebrada el 15 de marzo de 1988 que había escogido el nombre de su madre para que sea "quien me represente ahí".

data a las primarias internas del P.N.P. La paradoja de esta situación —de la cual su señora madre Ramírez Pantojas no puede desvincularse— es que ambas iniciaron un curso de acción unitario y confabulatorio que culminó con una candidatura en contravención de los procesos electorales —creando así confusión en el electorado afiliado al referido partido— que sólo detuvieron pocos días antes y en atención a la presentación de la demanda judicial.

## III

¿Qué efectos jurídicos tiene bajo nuestro ordenamiento jurídico-electoral este trasfondo fáctico? Concluimos que el 15 de marzo de 1988, fecha en que la aspirante Rosa María Ramírez Pantojas suscribió, juró y presentó en la Comisión Estatal de Elecciones el formulario sobre intención de nominarse por su partido a la posición de Representante por el Precinto Núm. 3 de San Juan, carecía en lo *absoluto* y no tenía verdadera intención de ser una candidata *bona fide*. Este hecho indisputable, *medular en el curso decisorio*, la descalifica por violar el texto y espíritu de la Ley Electoral de Puerto Rico, preceptivo de que todo elector aspirante a una nominación "acepta ser postulado como candidato . . .". 16 L.P.R.A. sec. 3164. Nos explicamos.

En todo diseño electoral existe una correlación recíproca, a título de pacto de dimensión tripartita, que se proyecta entre el candidato y los electores que suscriben inicialmente su petición de primarias al partido político al cual pertenecen y, finalmente, la ciudadanía participante en las elecciones generales. *El elemento cardinal en esa relación es la confianza que intrínsecamente genera la candidatura, de que la aspiración es legítima, personal e intransferible.*

En la medida en que Rosa M. Ramírez Pantojas —al *momento* de jurar y presentar su declaración de candidatura en la fecha límite fijada por la ley— no tenía verdaderamente ninguna intención de serlo, quedó ab initio descualificada.

Únicamente la inminencia del pleito y su posterior ventilación la movió a variar cualificadamente su postura para declarar que, de ser electa, no dejaría el escaño "a su hija".

La naturaleza especial e interés público de que está revestida en todas sus etapas la elección de candidatos, lejos de hacer inaplicable la doctrina general relativa al vicio del consentimiento por dolo o fraude —consistente aquí en la ausencia de una intención real de aspirar al cargo— reclama su más estricta aplicación como único mecanismo para no subvertir la razón lícita en que se funda. Desde su incepción, la trama urdida para defraudar y confundir a los electores constituye en sí misma —por su propia e inherente condición fraudulenta— un vicio de índole moral que constitucionalmente el Poder Judicial no puede convalidar y dar por bueno. Repetimos, toda candidatura es en sí un pacto de la más alta categoría en el orden jurídico y social del derecho público electoral. Cuando la candidatura no representa un compromiso y consentimiento real, de buena fe, sino que es producto de una conducta dolosa, ello ofende la moral y espíritu y, desde su génesis, está herido de muerte. En sus entrañas lleva el vicio del engaño. Ante ese cuadro revelador, no podemos auspiciar una candidatura que nace espuria y procede de un comportamiento maculado en su intrínseco valor social por el germen del fraude. Este cuadro no es susceptible de generar confianza pública, desvirtúa el propósito de su creación y niega al sistema su verdadera esencia como instrumento de utilidad social.

## IV

Una nota final cautelar. Es indudable que toda esta trama, en el fondo, nace y se proyecta por el amor maternofilial de las protagonistas y sus legítimos deseos de servir a una causa e ideal político. Respetamos los mismos. Sin embargo, es menester reconocer que esos sentimientos familiares y convicciones aquí no fueron válidamente encauzados.

Ciertamente no constituyen excusas para refrendarlos y menos para que debilitemos la integridad del proceso electoral que es la salvia que da vida al árbol representativo de nuestro sistema democrático.

Por los fundamentos expuestos, disentimos. Expediríamos el auto y modificaríamos la sentencia del tribunal de instancia a los fines de declarar que la Sra. Rosa M. Ramírez Pantojas está descualificada de aspirar a la nominación de Representante por el Distrito Núm. 3 de San Juan por el P.N.P.